# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 3:12CV270-RJC-DSC

| | |
|---|---|
| SYBIL D. ARANT, )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant. )<br>) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #12-1), both filed August 31, 2012; and Defendant's "Motion for Summary Judgment" (document #14) and "Memorandum in Support ... (document #15), both filed October 26, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On September 25, 2007, Plaintiff filed an application for a period of disability, Social

---

[1] Pursuant to the Pretrial Scheduling Order entered on July 2, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #11. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

Security benefits, and Supplemental Security Income ("SSI") initially alleging she was unable to work as of January 1, 2005. (Tr. 157-164, 177).[2] Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing which was held on February 9, 2010 (Tr. 73-110).

On April 13, 2010, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled (Tr. 49-68). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2005. The ALJ also found that Plaintiff suffered from obesity, lower back pain, diabetes mellitus, glaucoma and cataracts, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 54, 57). The ALJ then considered whether Plaintiff could return to her past relevant work. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform light[4] work, with restrictions that she sit for most of the work day, do no prolonged reading of small print, and no working with very small objects. She would also be limited to simple, routine work. (Tr. 57). Based on this RFC, the ALJ found that

---

[2] For purposes of disability benefits (DIB) only, a claimant must prove disability prior to her date last insured. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005). Plaintiff's date last insured for DIB was June 30, 2009 (Tr. 166).

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

2

Plaintiff was unable to perform her past relevant work (Tr. 62). The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a Vocational Expert ("V.E.") to conclude that Plaintiff could perform work existing in the national economy and therefore was not disabled within the meaning of the Social Security Act. (Tr. 62-64).

By notice dated July 15, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on April 30, 2012. On appeal, Plaintiff assigns error to the ALJ's alleged failure to resolve "apparent conflicts" between the V.E.'s testimony and the Dictionary of Occupational Titles ("DOT"); the ALJ's determination of Plaintiff's severe impairments and RFC; and the ALJ's analysis of Plaintiff's credibility. See Plaintiff's "Memorandum in Support ..." 5-18 (document #12-1). The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact,

if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[5] The V.E. identified three light jobs that Plaintiff could

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

perform: switchbox assembler, DOT 722.687-010, nut and bolt assembler, DOT, 929.587-010, and silverware wrapper, DOT 318.687-018. (Tr. 107).[5] Plaintiff argues that the V.E. failed to provide testimony that any of the those jobs could be performed while sitting most of the day, and that the restrictions in the RFC are otherwise inconsistent with the jobs identified.

Social Security Ruling 00-4p sets forth standards for the use of vocational experts. The Ruling contains specific provisions regarding conflicts as follows:

> Occupational evidence provided by a vocational expert or VS generally should be consistent with the occupational information supplied by the *DOT*. When there is an <u>apparent unresolved conflict</u> between vocational expert or VS evidence and the *DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling 00-4p, *4-5 (emphasis added). In accord with SSR 00-4p, the ALJ asked the V.E. if his testimony was consistent with the DOT. The V.E. answered that there were no inconsistencies. (Tr. 108). There was no conflict between the VE's testimony and the DOT. Sections 404.1567 and 416.967 of 20 C.F.R. define "light work" as work "involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; " work requiring a good deal of walking or standing; or work involving sitting most of the time with some pushing and pulling of arm or leg controls. The regulations contemplate that the light occupational base includes jobs that do not necessarily require a good deal of walking or standing, as Plaintiff concedes. Plaintiff's "Memorandum in Support ..." 6 (document #12-1).

The V.E. testified that Plaintiff could perform those three jobs in response to a hypothetical

---

[5] As Plaintiff notes, no DOT job listing corresponds to the number 318.680-187, cited by the V.E. (Tr. 107). The correct DOT number for silverware wrapper is 318.687-018. This is harmless error since the V.E. clearly was describing the silverware wrapper job.

question that included such a restriction (Tr. 106-107). Vocational expert testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC. See Walker v. Bown, 889 F.2d 47, 50-51 (4th Cir. 1989). Moreover, there was no further inquiry by Plaintiff or her attorney at the hearing (Tr. 107-108), which indicates there was no apparent misunderstanding on this issue. See Mosteller v. Astrue, No. 5:08-CV-003-RLV-DCK, 2010 WL 5317335, at *4-5 (W.D.N.C. Jul. 26, 2010) (affirming where there was no apparent, unresolved conflict between the V.E.'s testimony and the DOT, and plaintiff's counsel did not question the V.E. about the issue raised on appeal). Failure to challenge the V.E.'s testimony until after the hearing "undermines Plaintiff's allegations that some substantial error occurred." Pires v. Astrue, 553 F. Supp. 2d 15, 25 (D. Mass. 2008), (comparing with Carey v. Apfel, 230 F.3d 131, 146-47 (5th Cir. 2000) (accepting V.E.'s testimony, in part, because the testimony was unchallenged)).

Plaintiff argues that the "occasional" stooping requirement of the nut and bolt assembler job suggests that it requires the claimant to stand up to one-third of the workday, since stooping is performed from a standing position. Plaintiff cites no authority for the proposition that stooping can only be performed from a standing position. Indeed, stooping is defined as bending the body downward and forward by bending the spine at the waist. See, e.g., SSR 85-15. There is no requirement that the activity be performed from a standing position. Id. A requirement of occasional stooping or kneeling does not preclude an individual from sitting most of the day.

Plaintiff also argues that the restriction involving the reading of small print and working with very small objects is inconsistent with the switchbox assembler's requirement of "frequent" (from one-third to two-thirds of the workday) near acuity and frequent depth perception. However, the job listing indicates that this is not a visually demanding job. This job has low requirements in

6

form perception (which relates to the ability to perceive pertinent detail in objects or in pictorial or graphic material) and clerical perception (which relates to perceiving detail in verbal or tabular material, observing differences in copy, proofreading words and numbers, and avoiding perceptual errors in arithmetic computation). See Exhibit 2 at *3 to Plaintiff's "Memorandum in Support ..." 6 (document #12-1). Specifically, this job requires an aptitude of "4" (out of 5) for form perception, permitting the worker to be in the lowest third of the population (excluding the bottom 10 percent). The job requires an aptitude of "5" for clerical perception, permitting the worker to be in the bottom 10 percent of the population. Id. These low requirements suggest that the visual demands of this job are consistent with the RFC's restrictions. There is no indication in the job description for switchbox assembler that reading small print is a requirement.

In the hypothetical posed to the V.E., the ALJ included the restriction that Plaintiff's "vision-type problem" would preclude "assembling really small things [like] eyeglass frames, you know, those little teeny screws, that sort of thing." (Tr. 106-107). The description for switchbox assembler reads: "[i]nserts metal dovetails of box sides into slots of metal box bottoms, and hammers to clamp parts together to form switchboxes for telephones." See Exhibit 2 at *1 to Plaintiff's "Memorandum in Support ..." 6 (document #12-1). Metal dovetails on a box would be significantly larger than eyeglass screws. Thus, deference should be given to the V.E.'s testimony on this subject.

Plaintiff makes a similar argument concerning the nut and bolt assembler job. While nuts and bolts may be relatively small objects, they are larger than the screws used in eyeglass frames. This job also has the same low requirements for form perception and clerical perception as the switchbox assembler (and lacks requirements of frequent near visual acuity and frequent depth perception). Exhibit 3 at *3-4 to Plaintiff's "Memorandum in Support ..." 6 (document #12-1).

7

Additionally, this job description does not require any reading of small print. Id.

Plaintiff next argues that the ALJ erred in failing to assess two of her impairments (diabetic neuropathy with related edema, and headaches), and thus the resulting RFC assessment is flawed. To the contrary, the ALJ properly assessed Plaintiff's impairments.

The ALJ found that Plaintiff's diabetes mellitus constitutes a severe impairment. (Tr. 54). This finding would encompass diabetes-related conditions including neuropathy and edema. The portion of the decision that discussed this impairment referenced allegations of swelling and kidney problems. (Tr. 59).

While Plaintiff cites several records indicating abnormal kidney function and the presence of edema, none of these records identify any associated limitations. (Tr. 9, 14, 16, 185, 231, 307-309, 363, 365, 369-370, 389, 397, 410-411, 413, 466, 509, 514, 522, 524, 526-527, 534). Plaintiff has been able to treat her impairments with medications, such as using "Icy Hot" for significant relief from back pain, as well as Tylenol. (see Tr. 380, 383, 415, 417, 514-515). The only other evidence of any limitation associated with either impairment is Plaintiff's testimony that swelling prevented her from walking for five or six days a month. (Tr. 83), and that Dr. Foster advised her to rest with her legs elevated above her heart. (Tr. 81). These statements are not substantiated elsewhere in the record. The only medical record from Dr. Foster noted his recommendation on January 20, 2010 that Plaintiff stop taking Actos since it can cause swelling. (Tr. 46).

A record dated April 20, 2006 reflects that Plaintiff complained to Dr. Foster about swelling in her hands and feet over the previous two months that became worse with standing and activity. Dr. Foster did not report any objective findings and went on to note that Plaintiff was otherwise doing "good" on this date. (Tr. 411). On May 9, 2008, only trace edema was observed on

8

consultative examination, and Plaintiff's range of motion was full except for slight reductions in the thoracolumbar spine (forward flexion 80 out of 90, rotation 20 out of 30) and knees (flexion 120 out of 150), with a normal gait, albeit with a positive straight leg raise test in the left leg (Tr. 308, 310). As recently as December 2011, Dr. Foster noted good range of motion in her knees and low back. (Tr. 15). None of the records that Plaintiff cites for the purpose of establishing edema identify any resulting limitations during the period at issue. (Tr. 185, 231, 308, 363, 389, 410) or afterward (Tr. 14, 514, 522). Although Plaintiff has testified to limitations (Tr. 81, 83), they are not substantiated by the medical evidence of record. It was within the ALJ's discretion to omit these limitations from the RFC finding. A finding that an impairment passes muster at step two is not inconsistent with a later finding at step four that the same impairment does not restrict a claimant's RFC. See, e.g., Sykes v. Apfel, 228 F.3d 259, 268 n.12 (3d Cir. 2000) ("A finding under step two of the regulations that a claimant has a 'severe' nonexertional limitation is not the same as a finding that the nonexertional limitation affects residual functional capacity.")

Plaintiff also cites evidence as to the severity of these conditions that was obtained after the ALJ's decision but still considered by the Appeals Council. This evidence does not support any limitation greater than that assessed by the ALJ. (Tr. 490-513).

As noted in the ALJ's decision, Plaintiff has not been fully compliant with diabetes treatment. (Tr. 58-59; see 391, 394, 396, 402; see also 518). Prior to her diabetic coma, Plaintiff received Vicodin for a pulled muscle in her leg, and took more than was prescribed. (Tr. 491). After being found unresponsive and taken to the emergency room, she had an elevated blood sugar of 571 and suffered a tonic/clonic seizure. (Tr. 491). Plaintiff was subsequently noted to be seizure-free since controlling her glucose. (Tr. 491). Her glucose was controlled on a regimen of Lantus 18 units daily and NovoLog 8 t.i.d. with meals. (Tr. 492). Shortly after this event, on August 3, 2010,

Plaintiff was noted to be much more serious about monitoring her blood sugar. (Tr. 523-524). Her blood sugar later increased to the 250-300 range by March 18, 2011, following poor compliance with her diabetic diet. (Tr. 18). The evidence, both during the period under review and after, demonstrates that Plaintiff's diabetes and related symptoms were exacerbated by her noncompliance with treatment. Her condition improved with medication and treatment. A symptom that can be reasonably controlled by medication or treatment is not disabling. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Plaintiff cites elevated levels of creatinine on multiple occasions to support the alleged severity of her diabetic nephropathy. (Tr. 365, 369-370, 397, 534). However, many of these instances involved creatinine levels minimally elevated above the reference range of 0.4-1.0, such as 1.08 in October 2008 (Tr. 370) and January 2009 (Tr. 365), and 1.06 in August 2009 (Tr. 534) and March 2011. (Tr. 16). At times, her creatinine level has actually been within the reference range, at 1.0 in October 2006 (Tr. 403), May 2007 (Tr. 397), September 2007 (Tr. 392), 0.92 in August 2008 (Tr. 371), 0.91 in January 2010 (Tr. 532); 0.9 in April 2006 (Tr. 413) and January 2008 (Tr. 385), and 0.85 in June 2008 (Tr. 378). Although Plaintiff's creatinine levels were significantly higher in July and August 2010 at 2.25 (Tr. 526-527), this was several months after the date of the decision (April 13, 2010). Her creatinine levels were initially below 1.0 upon admission to the hospital in July 2010 (Tr. 509), and subsequently registered at 1.7 by September 2010 (Tr. 30) and 1.06 when measured in March 2011. (Tr. 16). Although they again rose to 1.49 on December 20, 2011 (Tr. 9), this was following a December 8, 2011 appointment where she denied any symptoms and reported feeling well. (Tr. 14). Creatinine levels have been within the reference range or only slightly elevated throughout the period at issue. Although significantly elevated at one point, this was after the period at issue and was followed by continued fluctuation downward. The evidence

fails to demonstrate any substantially elevated levels during the period at issue, and in any event no resulting limitations have been identified by any medical source.

The ALJ properly found that Plaintiff's headaches were not a medically determinable impairment. No acceptable medical source has diagnosed chronic or recurrent headaches that are commensurate with Plaintiff's complaints. (Tr. 90-91). While Plaintiff cites a treatment note from September 2005 by Dr. Foster documenting the presence of headaches, this note actually states that her headaches are responsive to Goody's Powder, an over-the-counter pain reliever. (Tr. 415, 417). Moreover, Dr. Foster did not give a diagnosis of "headaches" in her assessment. (Tr. 415, 417). Dr. Foster also noted that Plaintiff had reported no headaches during visits in October 2008 (Tr. 367) and January 2009. (Tr. 363).

While Plaintiff alleged that her headaches worsened with her glaucoma (Tr. 281), she did not report headaches to Dr. Browning, her ophthalmologist (see Tr. 245-279, 429-460, 478-489). At most, she described some pain on the right side of her face around the eye on March 8, 2007, and he listed "headaches ?" as an associated sign or symptom, but offered no clear opinion or diagnosis. (Tr. 249, 447, 449). He noted "headache" as a symptom on April 13, 2010, but also noted that she had run out of Xalatan, and did not discuss headaches in his diagnosis. (Tr. 482-485). These are the only notations of headaches that appear in records from Dr. Browning dating from March 2006 through April 2010. (Tr. 429-460, 478-489).

Dr. Gilbert noted "headache" as a "head symptom" in December 2010 and February 2011, months after the date of the decision, but provided no accompanying diagnostic impression or opinion. (Tr. 538, 541). In May 2008, consultative examiner Dr. Epps gave an impression of headaches, most likely muscular contraction tension type. Dr. Epps was only an examining source, and the impression was based on Plaintiff's one-time self-report without review of her medical

records. (Tr. 309).

No source, treating or otherwise, has identified any limitations resulting from Plaintiff's alleged headaches, or any necessary treatment for them absent the prescription of over-the-counter medication. Based on the very limited evidence available, the ALJ's finding that Plaintiff's alleged headaches do not constitute a medically determinable impairment is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's obesity, lower-back pain, diabetes mellitus, glaucoma and cataracts – which could be expected to produce some of the pain claimed by Plaintiff.

Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that it was "difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons" in the context of "relatively weak medical evidence" and other factors discussed in the decision. (Tr. 58).

Plaintiff alleges that the ALJ found her to be less than fully credible in a "boilerplate" fashion. In fact, the ALJ provided several reasons for discounting Plaintiff's subjective complaints. The ALJ considered Plaintiff's reported symptoms, including their location, duration, frequency, aggravating factors, and resulting limitations. (Tr. 58). The ALJ considered her use of medication and its efficacy, as well as other treatment utilized. Id. The ALJ also considered her statements regarding her daily activities. Id.; 20 CFR §§ 404.1529(c)(3); 416.929(c)(3). The ALJ identified specific examples to support this finding, including the fact that she has been non-compliant with treatment. Plaintiff testified that her children do chores, but during a consultative examination she said they only help her do chores. (Tr. 58, 92, 282). See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (holding that a claimant's daily activities, such as performing home exercises, taking care of the family pets, cooking, and doing laundry, were inconsistent with the claimant's complaints of excruciating pain and inability to perform basic physical and mental work).

The ALJ went on to identify inconsistencies between Plaintiff's statements and information contained in the medical record, including notations that she was doing well despite complaints; vagueness of her complaints; noncompliance with sliding scale insulin treatment because she did not like taking shots; essentially routine and conservative treatment for diabetes; largely normal visual examinations and the fact that Plaintiff was happy using only reading glasses (Tr. 59; see Tr. 245-279, 261, 384, 391, 394, 396, 402, 422, 424, 429-460); improvement in pain following the use of medication; good range of motion of extremities; a normal gait; only mild findings on imaging

studies of Plaintiff's spine (Tr. 60; Tr. 281, 308, 383, 394, 400-402); and the fact that no treating physician has recommended specific work-related exertional or nonexertional limitations. (Tr. 62).

Although the medical records establish that Plaintiff experienced pain to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);

Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: October 30, 2012

David S. Cayer
United States Magistrate Judge